**2018 UT App 225**

## THE UTAH COURT OF APPEALS

NOE ARREGUIN-LEON,
Appellee,
*v.*
HADCO CONSTRUCTION LLC,
Appellant.

Opinion
No. 20161092-CA
Filed December 13, 2018

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 130400816

Karl M. Tilleman, Robert L. Janicki, and Michael L.
Ford, Attorneys for Appellant

Troy L. Booher, Beth E. Kennedy, Leonard E. McGee,
and Peter R. Mifflin, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     Working on a ladder involves certain inherent risks. Working on a ladder on the shoulder of Utah's largest interstate freeway magnifies those risks. In this series of unfortunate events, a car crash into a construction site knocked Noe Arreguin-Leon (Plaintiff) off a ladder and caused him to sustain serious bodily injury. Plaintiff sued Hadco Construction LLC (Hadco) for negligently failing to implement a proper traffic control plan, which purportedly would have protected against cars entering the construction site. At trial, the jury awarded Plaintiff $2.9 million in damages and found Hadco partially responsible for Plaintiff's injuries. Hadco appeals, and we reverse and remand for a new trial.

BACKGROUND

*The Accident*

¶2    The Utah Department of Transportation (UDOT) contracted with Hadco to build a new stretch of road on I-15 (the Corridor). Hadco subcontracted with Highway Striping & Signs (HSS) to install all road signs along the Corridor. As principal contractor of the Corridor, Hadco was responsible for implementing a traffic control plan to protect the construction workers but failed to do so. On the day of the accident, because Hadco had provided them no protection from traffic, the construction workers parked their semitrailer behind the work site in an attempt to safeguard themselves while installing a sign.

¶3    Plaintiff, who was employed by HSS, worked on the Corridor. He was atop a ladder, installing an exit sign, when a driver (Driver), who had fallen asleep at the wheel, suddenly veered off course, drove into the construction site, and crashed into Plaintiff's ladder.[1] Plaintiff fell from the ladder and sustained significant injuries. After resolving his claims against Driver, Plaintiff brought suit against Hadco for negligently failing to implement a proper traffic control plan.

*The Lawsuit*

¶4    During pre-trial discovery, Plaintiff disclosed a traffic engineer as an expert (Expert). Plaintiff specified that Expert would testify regarding Hadco's violation of five engineering practices, regulatory standards, or contractual provisions, including that: (1) no traffic control (warning signs, barrels, etc.) was in place at the accident site; (2) HSS had placed vehicles near

---

1. Driver stated that he fell asleep while driving and reported waking up to hear "the grids in the road" and "seeing the back end of the flatbed." He further testified that he swerved to avoid the truck, but lost control and hit Plaintiff's ladder.

the accident site in violation of a UDOT standard known as a "work clear zone"; (3) HSS customarily placed its vehicles on the side of the road to protect workers, and if that were the case, a UDOT approved traffic control plan should have been designed to close the shoulder in conformance with "TA-5," a regulatory standard governing how to close the shoulder of a highway; (4) Hadco knew or should have known that HSS would be working at the accident site on the day of the incident, and therefore should have taken corrective action; and (5) no traffic control plan for the accident site had been designed by a professional engineer or approved by UDOT.

¶5    Because Hadco did not provide a traffic control plan specific to the Corridor, Expert did not base any opinion on an actual plan. Plaintiff disclosed that Expert arrived at his opinions by visiting the accident site and reviewing "(1) UDOT standard plans and drawings, (2) the Manual on Uniform Traffic Control Devices (2003 ed.), and (3) information provided by Plaintiff's counsel, which consisted of deposition transcripts, the police report, pictures, subcontract agreements, and daily traffic control plan inspections." Plaintiff's counsel did not disclose that Expert would offer trial testimony regarding causation.

¶6    In lieu of having Expert submit an expert report, Hadco elected to depose and cross-examine Expert on the five disclosed traffic-control opinions, *see supra* ¶ 4. During the deposition, Expert explained that Hadco should have closed the shoulder. He further explained that Hadco should have installed a taper, a buffer zone, signs, and barricades. At the conclusion of the examination, Hadco's counsel asked Expert, "Do you have any other opinions in this case that we have not talked about today?" Expert responded, "No," and asked to review the transcript, but he did not correct or add anything to his deposition testimony.[2]

---

2. Plaintiff argues that the issue of expert disclosure and discovery is unpreserved because (1) the stated objection went only to disclosures and not discovery and (2) the deposition was

(continued…)

¶7    After Expert's deposition—but before trial—Hadco provided Plaintiff with a supplemental disclosure, containing "a

---

(…continued)

not put in the trial court record either at trial or by a post-trial motion. But we determine this issue is preserved based on the fact that Hadco's counsel discussed the deposition with the trial court, *see infra* ¶ 9, and therefore, had the court allowed Hadco's counsel to elaborate on this point, it would necessarily follow that the deposition would likely have been reviewed by the trial court.

Rule 46 of the Utah Rules of Civil Procedure states that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice [the party]." Utah R. Civ. P. 46. Where a trial court prevents a party from creating a record, as occurred here, the opposing party cannot claim that the issue is unpreserved because of the lack of a record. *See id.*; *see also United States v. Caper*, 571 F. App'x 456, 459–60 (6th Cir. 2014) ("An 'opportunity' to object is illusory when the district court cuts off defense counsel, insisting that counsel need not even articulate an objection because 'everything's preserved.'"); *Hanks v. Christensen*, 354 P.2d 564, 566 (Utah 1960) ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him. Under such rule, if counsel was prevented from making objections, he should be deemed to have done so." (cleaned up)); *Albores v. Bracamontes*, 2006 UT App 204, ¶¶ 4–5, 138 P.3d 106 (where a party was left "completely without occasion to object," the absence of an objection did not prejudice the party).

Further, we acknowledge that the deposition was filed after the judgment was entered in this matter, but before the record was prepared. While such filings normally would not put the deposition before us for consideration, under the unique facts of this case—in the context of the trial court precluding a complete record from being made—we choose to exercise our discretion and consider the deposition. Plaintiff has made no claim that the deposition transcript is not accurate.

packet . . . consisting of Hadco's daily traffic control plans . . . and copies of UDOT standard drawings." The supplemental disclosure did not directly or specifically address the Corridor. Rather, the disclosure contained UDOT's single-page standard plan for a lane closure. Hadco also retained a traffic control expert "to rebut [Expert's] five disclosed traffic-control opinions," but did not retain an expert "to testify on the issue of whether Hadco's conduct caused Plaintiff's injuries because Plaintiff had not disclosed an expert on that issue."

*The Trial*

¶8      At trial, Hadco's primary defenses were that Driver—not Hadco—caused Plaintiff's injuries, and that Hadco was unaware that HSS was working on the Corridor on the day of the accident. The jury heard undisputed evidence, from Hadco's Director of Operations and Hadco's own expert witness, that (1) the purpose of traffic control plans is to protect workers from traffic, (2) it was Hadco's responsibility to implement a traffic control plan for the Corridor, and (3) Hadco did not implement any plan.

¶9      Expert testified regarding the five disclosed traffic-control opinions. Plaintiff then asked Expert to give his opinion on whether Hadco's failure to implement a traffic control plan caused the accident and Plaintiff's injuries. Hadco's counsel immediately objected to the testimony regarding causation for three reasons: (1) Plaintiff had not disclosed that Expert would offer any opinions regarding causation, (2) Expert had not disclosed any data or information upon which he allegedly relied to formulate his surprise causation trial opinion, and (3) Expert testified at his deposition that he had no opinions in the case beyond those discussed at his deposition, which did not include any opinion relating to causation. The following bench conference ensued:

> Hadco's counsel: Seems to me like this testimony is going toward causation—would traffic control have prevented the accident—and it goes beyond

any opinion that he's ever disclosed in this case. There's a list of his items of testimony, and he doesn't touch on that at all.

Plaintiff's counsel: Your Honor, [Expert] was deposed in this case. [Hadco's counsel] had every opportunity to ask any question he wanted, and—he's not limited to the initial disclosure. If he had—if [Hadco's counsel] had elected a report, he would be limited to the contents of the report, but because a deposition has been elected, [Expert] is not so limited.

Hadco's counsel: That's not correct, your Honor.

Plaintiff's counsel: And—and there were documents provided to [Expert] after (inaudible).

Hadco's counsel: Then he needs to supplement his disclosure.

The court: Your objection is noted and is, frankly, overruled.

Hadco's counsel: Can I make a record—a record on this? I think it's very important.

The court: This record is the record here now.

¶10 Expert went on to testify that if the required traffic control plan had been implemented, "[t]here might have been an accident still. There's no question about that. I don't think the accident would have taken place where this happened" and therefore, Plaintiff's injury would not have occurred. Expert then explained that the traffic control plan required Hadco to place barrels over nearly 900 feet around the work site. To identify where Driver fell asleep, Expert relied upon Hadco's incident report, which stated that Driver fell asleep about 200 yards from

the worksite. Expert noted that this was "within that 900-foot area" where there should have been barrels, and if Hadco had implemented the standard plan, he "would fully expect" that Driver would have hit "at least one, if not more, of these plastic barrels."

¶11 Expert further opined that, based on his own experience with hitting barrels, Driver would have awakened if he hit a barrel. As Expert put it, "[t]here's a hellacious racket that erupts when you hit one of these things. . . . they make quite a noise. And so, had this area been, in fact, barricaded, as was suggested by the standard drawing, this driver would have been aware immediately upon impact of one of those barrels."

¶12 Expert then described what would have happened after Driver awakened on impact, based upon his professional training and experience. First, he explained that "normal perception, judgment, reaction time is about 2.5 seconds. That's the average that traffic engineers use to say, 'Okay. I'm seeing something. I need to adjust to it. I need to then take corrective action.'" Next, Expert opined that during the 2.5 seconds it likely took for Driver to awaken, Driver "would have had close to six seconds to wake up and take corrective action," which included "jerk[ing] hard left to get back on [I-15]." This opinion was based on the area's speed limit of 65 miles per hour,[3] in combination with the report stating where Driver left the road. He acknowledged that his expert opinion was based upon assumptions, both from his professional experience and from facts provided to him in the case.

¶13 On cross-examination, Hadco's questions were designed to emphasize that Expert did not know (1) precisely where

---

3. Driver testified that he had no reason to believe he was traveling any slower than the speed limit, and furthermore, Hadco stated in closing argument that Driver was "in a vehicle that was traveling at 65 miles an hour that caused all of the harm we're talking about today."

Driver fell asleep or (2) that hitting a barrel would have awakened him. But Expert responded by stating that his conclusion—that Driver would have awakened if he hit a barrel—did not depend on that location, explaining that, if Driver fell asleep anywhere along the 900-foot stretch where Hadco should have placed barrels, Driver would have hit a barrel, creating a "hellacious sound" that was "going to wake him up."

¶14   At the close of Plaintiff's case, Hadco moved for a directed verdict on the ground that Plaintiff had not presented "sufficient evidence that a jury should conclude that the lack of traffic control devices caused this accident." After a recess, the trial judge denied Hadco's motion. The jury went on to find Hadco partially at fault and apportioned 40% of Plaintiff's total $2,940,018.18 in damages to Hadco based on causation. Hadco appeals.

ISSUES AND STANDARDS OF REVIEW

¶15   Hadco brings several issues on appeal. First, it argues that the trial court erred, under rule 26 of the Utah Rules of Civil Procedure, in allowing Expert's undisclosed causation opinion to be elicited during trial. "While interpretations of the Utah Rules of Civil Procedure are questions of law reviewed for correctness," we recognize that trial courts have "a great deal of deference in matters of discovery." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 18, 392 P.3d 956 (cleaned up). We therefore "review discovery orders for abuse of discretion . . . [and] will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Id.* (cleaned up).[4]

---

4. Hadco also argues that the trial court erred, under rule 702 of the Utah Rules of Evidence, in admitting Expert's undisclosed causation opinion. "The trial court has wide discretion in

(continued…)

¶16 Lastly, Hadco argues that the trial court erred in denying Hadco's motion for directed verdict "where the jury would have had to speculate to make a causation finding against Hadco." We review a trial court's ruling on a motion for directed verdict for correctness. *Blackmore v. L & D Dev. Inc.*, 2016 UT App 198, ¶ 24, 382 P.3d 655. On appeal from a denial of a motion for a directed verdict based on the sufficiency of the evidence, "the applicable standard of review is highly deferential." *State v. McCallie*, 2016 UT App 4, ¶ 39, 369 P.3d 103 (cleaned up). The evidence is to be viewed in the light most favorable to the party moved against. *Mahmood v. Ross*, 1999 UT 104, ¶ 16, 990 P.2d 933.

ANALYSIS

I. Admission Under Rule 26

¶17 Hadco first argues that the trial court abused its discretion under rule 26 of the Utah Rules of Civil Procedure when it allowed Expert to give his causation opinion at trial. We first address whether the court abused its discretion, conclude that it did, and then analyze whether the error was harmless.

A. Abuse of Discretion

¶18 Rule 26 governs disclosure, discovery, and use of documents, testimony, and other evidence in hearings or at trial.

---

(…continued)
determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard. Under this standard, we will not reverse a decision to admit or exclude expert testimony unless the decision exceeds the limits of reasonability." *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (cleaned up). Here, there is a significant question of preservation, as well as inadequate briefing. Because we are already reversing and vacating the judgment on other grounds, we decline to further address this issue.

*See* Utah R. Civ. P. 26. In short, the rule requires a party wishing to use an expert witness to make initial disclosures, participate in discovery, and supplement those disclosures and discovery responses as necessary. *See id.* R. 26(a)(4)(A)–(B), (d)(5). If a party does not comply with the rules, the party will likely not be allowed to use the evidence—exclusion is the presumed remedy. *See id.* R. 26(d)(4); *see also Williams v. Anderson*, 2017 UT App 91, ¶ 16, 400 P.3d 1071; *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 21, 392 P.3d 956.

¶19    Plaintiff argues that under rule 26, "[a]n expert's trial testimony is limited by an expert report, not expert disclosures." Because the trial court cut off any effort to make a complete record, we must assume that the court ruled consistent with the argument of opposing counsel. In response to Hadco's objection, Plaintiff's counsel argued, "[I]f [Hadco's counsel] had elected a report, he would be limited to the contents of the report, but because a deposition has been elected, [Expert] is not so limited." Thus, Plaintiff argued at trial—and continues to argue on appeal—that when a party elects to depose an expert under rule 26, any limitation on the scope of an expert's testimony evaporates because the deposing party has the opportunity to ask anything it wants to during the deposition. We disagree.

¶20    This may have been the way things worked in days past, but under the current rule that is no longer the case. We reject Plaintiff's argument and hold that the trial court misinterpreted rule 26 as a matter of law and thereby abused its discretion. As we now set out to explain, although rule 26 may be more express in limiting expert testimony when a report is at issue, when a party locks in an expert's opinions in a deposition, the same limitations on the scope of expert testimony attach.

¶21    Rule 26 states, in relevant part,

> (a)(4)(A) *Disclosure of expert testimony.* A party shall, without waiting for a discovery request, serve on the other parties the following information regarding any person who may be used at trial to

present evidence under Rule 702 of the Utah Rules of Evidence and who is retained or specially employed to provide expert testimony in the case . . . : (i) the expert's name and qualifications, . . . (ii) a brief summary of the opinions to which the witness is expected to testify, (iii) all data and other information that will be relied upon by the witness in forming those opinions . . . .

(a)(4)(B) *Limits on expert discovery*. Further discovery may be obtained from an expert witness either by deposition or by written report. . . . A report shall be signed by the expert and shall contain a complete statement of all opinions the expert will offer at trial and the basis and reasons for them. Such an expert may not testify in a party's case-in-chief concerning any matter not fairly disclosed in the report. . . .

(a)(4)(C) *Timing for expert discovery*.

> (i) The party who bears the burden of proof on the issue for which expert testimony is offered shall serve on the other parties the information required by paragraph (a)(4)(A) within seven days after the close of fact discovery. Within seven days thereafter, the party opposing the expert may serve notice electing either a deposition of the expert pursuant to paragraph (a)(4)(B) and Rule 30, or a written report pursuant to paragraph (a)(4)(B). The deposition shall occur, or the report shall be served on the other parties, within 28 days after the election is served on the other parties. If no election is served on

> the other parties, then no further discovery
> of the expert shall be permitted.

Utah R. Civ. P. 26(a)(4)(A)–(C). Thus, rule 26 provides a mechanism for the disclosure of anticipated expert testimony and the determination of whether an opposing party will elect to obtain a report from the expert or depose the expert. To be sure, and as the advisory committee notes acknowledge,[5] rule 26 is drafted to encourage the use of reports instead of depositions in an effort to simplify and reduce costs associated with litigation.[6]

---

5. *See Burns v. Boyden*, 2006 UT 14, ¶ 18 n.6, 133 P.3d 370 (explaining that although the advisory committee notes are not authoritative, they are "a . . . reliable indicator of [the Utah Supreme Court's] intent in adopting the rules.").

6. See the advisory committee notes to rule 26, which state:
> *Expert disclosures and timing. Rule 26(a)(3).* Expert discovery has become an ever-increasing component of discovery cost. . . . However, [under the previous rules] because the expert was not required to sign these disclosures, and because experts often were allowed to deviate from the opinions disclosed, attorneys typically would take the expert's deposition to ensure the expert would not offer "surprise" testimony at trial. . . . The amendments seek to remedy this and other costs associated with expert discovery by, among other things, allowing the opponent to choose either a deposition of the expert or a written report, but not both; in the case of written reports, requiring more comprehensive disclosures, signed by the expert, and making clear that experts will not be allowed to testify beyond what is fairly disclosed in a report, all with the goal of making reports a reliable substitute for depositions . . . .

But this emphasis does not turn the choice of a deposition into a free-for-all. Instead, while the election of a report locks in the scope of the expert's testimony by operation of the rule itself (rule 26(a)(4)(B)), when an election is made to proceed with a deposition, it is up to the party deposing the expert to "lock in" the expert's opinion. The expert witness is bound by the testimony she gives in a deposition and, similarly, the party sponsoring the expert remains responsible, under penalty of exclusion of testimony, to supplement any disclosures or discovery responses previously made—*including responses given in a deposition*.

¶22 Rule 26 expressly provides, in relevant part,

(d)(3) A party is not excused from making disclosures or responses because the party has not completed investigating the case or because the party challenges the sufficiency of another party's disclosures or responses or because another party has not made disclosures or responses.

(d)(4) If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.

*Id*. R. 26(d)(3)–(4). These provisions of rule 26 make clear that disclosure and supplementation of *both* disclosures and discovery responses are required and that if a party fails to disclose or supplement a discovery response, the evidence or testimony may not be used.

¶23 In this case, the specific disclosure was the initial disclosure of Expert's anticipated testimony and the specific discovery response was Expert's deposition testimony. More particularly, the discovery was limited by Expert's answer of

"No" to the question of whether he had any other opinions. Because Expert never supplemented his deposition answer—the discovery response—the causation testimony should not have been allowed at trial, absent a determination that Plaintiff's failure to supplement his discovery responses was harmless or excused by good cause—a determination that the trial court never made. *See id.* R. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.").

¶24    The advisory committee notes support this interpretation and expressly address the "lock in" issue in expert depositions. The committee notes state,

> The intent is not to require a verbatim transcript of exactly what the expert will say at trial; instead the expert must fairly disclose the substance of and basis for each opinion the expert will offer. The expert may not testify in a party's case in chief concerning any matter that is not fairly disclosed in the report. To achieve the goal of making reports a reliable substitute for depositions, courts are expected to enforce this requirement. If a party elects a deposition, rather than a report, it is up to the party to ask the necessary questions to "lock in" the expert's testimony. But the expert is expected to be fully prepared on all aspects of his/her trial testimony at the time of the deposition and may not leave the door open for additional testimony by qualifying answers to deposition questions.

Utah R. Civ. P. 26 Advisory Committee Notes. These notes reinforce the intent of rule 26, which is to preclude parties from trying to gain an advantage by offering "surprise" testimony at

trial that has not been disclosed to, or evaluated by, the opposing party.

¶25 Here, the opinions that Expert disclosed in his deposition limited the scope of his trial testimony, and he deviated from those opinions. During the deposition, Hadco asked, "Do you have any other opinions in this case that we have not talked about today?" and Expert responded, "No." Because the causation testimony presented at trial exceeded both the scope of the disclosure and scope of the deposition as "locked in" by questioning, subsection (d)(4) was triggered, which (absent good cause or harmlessness) should have resulted in any testimony which exceeded the scope being excluded at trial. *See* Utah R. Civ. P. 26(d)(4).[7]

¶26 Accordingly, the trial court's ruling—which implied that because Hadco elected a deposition, rather than an expert report, it could not object to the scope of Expert's testimony—constituted an erroneous interpretation of rule 26 and exceeded its discretion. *See Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 ("An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the trial court's ruling." (cleaned up)).

---

7. We recognize that where testimony is but a mere elaboration, supplemental disclosures might be unnecessary in some cases. *See Conners v. Poticha*, 689 N.E.2d 313, 316–18 (Ill. App. Ct. 1997) (holding that an expert may provide an opinion as to causation where the opinion constitutes "an elaboration or refinement of a well-established theory"). But that is not the case here. Expert's trial testimony was not merely an elaboration on his deposition testimony concerning what Hadco should have done to protect Plaintiff and the other HSS employees. At trial, Expert provided additional, new opinions regarding a causative connection between Hadco's alleged negligence and Plaintiff's fall.

B.     Harmless Error

¶27    And we are unable to classify the trial court's error as harmless. "Even if the trial court exceeded its discretion, an appellant has the burden to show that the error was substantial and prejudicial, meaning that the appellant was deprived in some manner of a full and fair consideration of the disputed issues by the trier of fact." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 33, 392 P.3d 956 (cleaned up). An error is harmful "only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict." *Id.* (cleaned up).

¶28    It is difficult for this court to determine what quantum of evidence tipped the scales for the jury to find in Plaintiff's favor or to apportion fault in the manner the jury did. Ultimately, for several reasons, we cannot conclude that the jury would have inevitably reached the same result without Expert's testimony. First, causation was a central and hotly contested issue at trial. Second, Expert's opinion was not cumulative of any other witness, and carried the imprimatur of coming from an "expert." Finally, Expert's opinion provided a logical roadmap that the jury could—and likely did—follow in deciding the issues of liability and in apportioning fault. Accordingly, any error caused by the trial court allowing Expert to testify regarding causation was not harmless and warrants reversal.[8]

## II. Motion for Directed Verdict

¶29    Hadco also argues that the trial court erred in denying Hadco's motion for directed verdict because Plaintiff's reliance on Expert's opinion left a "fatal gap in his prima facie negligence

---

8. We express no opinion regarding whether further discovery, supplementation, or even additional expert disclosures should be allowed by the trial court on remand. We leave it to the able determination and discretion of the trial court to decide how to proceed.

case."[9] A trial court may properly grant a motion for directed verdict only when, after "examining all evidence in a light most favorable to the non-moving party, [the court concludes that] there is no competent evidence that would support a verdict in the non-moving party's favor." *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 21, 417 P.3d 95 (cleaned up). We "will sustain the denial [of a motion for directed verdict] if reasonable minds could disagree with the ground asserted for directing a verdict. . . . [W]e review the trial court's decision to determine if the evidence at trial raised a question of material fact which

---

9. In contrast, Plaintiff attempts to argue on appeal that all of Hadco's issues are unpreserved because Hadco failed to renew its motion for directed verdict after trial and, therefore, did not meet the procedural requirements set forth in rule 50(b) of the Utah Rules of Civil Procedure. We decline to address this issue because Hadco's argument fails for other reasons. But we observe that although the United States Supreme Court imposes such a requirement under the analogous federal rule, *see Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400–01 (2006) (holding that in the absence of a post-verdict motion under rule 50(b), an "appellate court [is] without power to direct the District Court to enter judgment contrary to the one it had permitted to stand" (cleaned up)), that holding is untethered to the language of the rule itself, and we have our doubts that our supreme court would reach the same conclusion if it were asked to interpret the Utah rule, *see Burns v. Boyden*, 2006 UT 14, ¶ 19, 133 P.3d 370 ("We interpret court rules, like statutes and administrative rules, according to their plain language."); *see also Strand v. Nupetco Assocs. LLC*, 2017 UT App 55, ¶ 4, 397 P.3d 724 ("Courts are, in short, bound by the text of the rule."); *State v. Quinonez-Gaiton*, 2002 UT App 273, ¶ 11, 54 P.3d 139 ("We interpret a rule by examining the rule's plain language . . . ." (cleaned up)); *State v. Parker*, 936 P.2d 1118, 1119, 1122 (Utah Ct. App. 1997) (declining to adopt a United States Supreme Court interpretation of a rule because the interpretation was "not consistent with the plain language" of the Utah rule).

precluded judgment as a matter of law." *Hall v. Peterson*, 2017 UT App 226, ¶ 19, 409 P.3d 133 (cleaned up). In considering this issue, we view the evidence as it existed at the close of evidence, without determining whether it was properly admitted. *Franklin v. Stevenson*, 1999 UT 61, ¶ 7, 987 P.2d 22.

¶30   Here, the evidence presented at trial—even without Expert's causation opinion—was sufficient to create a jury question as to causation, and therefore, the issue was properly submitted to the jury and Hadco's motion for directed verdict was correctly denied. Causation is that "which, in the natural and continuous sequence (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." *Mahmood v. Ross*, 1999 UT 104, ¶ 22, 990 P.2d 933 (cleaned up). Causation is "generally determined by an examination of the facts, and questions of fact are to be decided by the jury." *Id*. Thus, trial courts should deny a motion for directed verdict on issues of causation "if there is any evidence which might lead a reasonable jury to find a causal connection between a breach and a subsequent injury." *Id*.

¶31   Based on the testimony of witnesses, there was certainly evidence that might lead a reasonable jury to find a causal connection between the absence of a traffic control plan and Plaintiff's injuries. It is certainly possible, at least in some cases, to demonstrate such a causal connection without retaining an accident reconstruction expert. Here, the jury heard undisputed evidence, from a Hadco employee as well as Hadco's own expert witness, that (1) the purpose of traffic control plans is to protect workers from traffic, (2) it was Hadco's responsibility to implement a traffic control plan for the Corridor, and (3) Hadco did not implement any plan. Furthermore, the jury heard evidence from percipient witnesses about the configuration of the accident, the dimensions of the work site, where Driver veered off the road, and generally how the accident unfolded. On that evidence, the jury was entitled to draw conclusions regarding whether implementation of a traffic control plan

would have prevented the accident.[10] It necessarily follows that the evidence was sufficient to support the denial of Hadco's motion for directed verdict. *See Utah Dep't of Transp. v. Target Corp.*, 2018 UT App 24, ¶ 12, 414 P.3d 1080, *cert. granted*, 425 P.3d 800 (Utah 2018). Therefore, the trial court correctly denied Hadco's motion.

## CONCLUSION

¶32 The court abused its discretion in allowing Expert's causation testimony. Further, the error was harmful enough to warrant reversal and a new trial. Lastly, based upon the totality of the evidence presented at trial, the court correctly denied Hadco's motion for directed verdict.

───────────

10. While the expert testimony presented may have informed the jury's consideration of the facts, the jury as fact finder was free to accept or reject part or all of any of the experts' opinions. *See SA Group Props. Inc. v. Highland Marketplace LC*, 2017 UT App 160, ¶ 24, 424 P.3d 187; *Woodward v. LaFranca*, 2016 UT App 141, ¶ 13, 381 P.3d 1125.