*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 43**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KATHLEEN PINNEY,
*Respondent,*

*v.*

RICARDO CARRERA,
*Petitioner.*

No. 20190117
Heard February 10, 2020
Filed July 6, 2020

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Paige Petersen
No. 150900750

Attorneys:

Blake W. Johnson, Orem, for respondent

Barbara K. Berrett, Matthew H. Wood, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE PULLAN joined.

Having recused herself, JUSTICE PETERSEN does not participate herein; DISTRICT COURT JUDGE DEREK P. PULLAN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 In this automobile accident case, defendant Ricardo Carrera raises two challenges to a general-damages award granted to plaintiff Kathleen Pinney. First, Mr. Carrera argues that Ms. Pinney should not have received any general damages,

because she failed to satisfy the requirements set out in Utah Code section 31A-22-309, a prerequisite to receiving general damages in most automobile accident cases. Specifically, Mr. Carrera argues that Ms. Pinney failed to satisfy the statutory requirement because she did not show that she sustained a "permanent disability or permanent impairment *based upon objective findings.*"[1]

¶2 Although Mr. Carrera concedes that Ms. Pinney presented evidence of a permanent impairment, he argues that this evidence does not satisfy the statute, because it was tainted by the personal bias of Ms. Pinney's treating physician. So Mr. Carrera interprets the statutory phrase "based upon objective findings" to require findings that are untainted by bias. We disagree. Instead, we interpret the phrase "based upon objective findings" to require only that findings regarding a permanent disability or impairment be based on externally verifiable phenomena, rather than on an individual's subjective perceptions or feelings regarding the injury. Accordingly, Mr. Carrera's statutory argument fails.

¶3 Alternatively, Mr. Carrera argues, under Rule 59 of the Utah Rules of Civil Procedure, that a new trial on the amount of damages should be granted. The crux of Mr. Carrera's argument on this point is that the amount of *general*, or noneconomic, damages Ms. Pinney was awarded—$300,000—is excessively disproportionate to the economic damages awarded in this case—$0. In making this argument, Mr. Carrera does not attempt to rebut any of the evidence Ms. Pinney presented regarding her pain and suffering—evidence relevant to an award of general damages. Instead, he focuses on Ms. Pinney's failure to present evidence that would support an award of *specific* damages. But because specific and general damages are aimed at measuring different types of harm, the fact finder is free to consider different factors in calculating an appropriate amount for each type of award. So there is no reason why the amount of one type of damage award would need to be proportional to the other. Accordingly, Mr. Carrera's proportionality argument also fails.

## Background

¶4 After running a stop sign, Ricardo Carrera crashed into a vehicle driven by Kathleen Pinney. Ms. Pinney brought a civil action against Mr. Carrera for damages. At trial, Ms. Pinney focused on non-economic (or general) damages that resulted from

---

[1] UTAH CODE § 31A-22-309(1)(a) (emphasis added).

the accident. Specifically, she argued that she should be compensated for pain and suffering stemming from an injury to her neck and a herniated disc in her back.

¶5   To support her claim for pain-and-suffering damages, Ms. Pinney called several witnesses to testify on her behalf. Her daughter and friend testified that her injuries limited her ability to perform many tasks she had regularly performed before the accident. For example, Ms. Pinney's daughter testified that Ms. Pinney could not ride certain amusement park rides and struggled to pick up small children. And Ms. Pinney's friend, with whom Ms. Pinney had lived for sixteen months following the accident, testified generally about the negative effect the injuries had on Ms. Pinney's life.

¶6   Additionally, Ms. Pinney called Dr. Dan George, her chiropractor, to testify regarding the nature of her injuries. Dr. George testified that the accident caused Ms. Pinney to sustain a herniated disc in her back. And he specifically testified that the herniated disc constituted "a permanent injury." He also testified that scar tissue in her neck, which stemmed from injuries sustained in the accident, inhibited Ms. Pinney's range of motion, and that treatment failed to restore her range of motion back to "100 percent." And he testified that "the scar tissue is permanent." Importantly, all of his conclusions were based on multiple x-rays and an MRI of Ms. Pinney's injuries, as well as on his medical examinations of her during the course of her treatment. Based on this evidence, Ms. Pinney requested the jury award her general damages equal to $50 or $75 per day until she turned eighty. This amounted to a request ranging from approximately $419,000 to $630,000.

¶7   After considering the evidence presented by both parties, the jury awarded Ms. Pinney $300,000 in general damages. In response, Mr. Carrera filed a post-trial motion for judgment notwithstanding the verdict. In his motion, he argued that Ms. Pinney was barred from receiving general damages because she failed to satisfy the requirement set forth in Utah Code section 31A-22-309(1)(a). This statute bars an award of general damages where a plaintiff has not sustained one of five types of injury identified in the statute.[2] In this case, the only injury type at issue

---

[2] The Utah Legislature recently amended this statute to include a sixth type of injury — "a bone fracture." This change does not take effect until January 1, 2021.

is a "permanent disability or permanent impairment based upon objective findings."[3] Citing this statute, Mr. Carrera argued that Ms. Pinney failed to demonstrate "objective findings" of a permanent injury.

¶8    Mr. Carrera based his argument on statements Dr. George had made during cross-examination. During cross-examination, Dr. George stated that he had not issued Ms. Pinney a "permanent impairment rating." He explained that he no longer issued impairment ratings to his patients because impairment ratings "tend to hold more clout if another physician" — "one [who] hasn't worked with [the patient]" — "does them."[4] Because Dr. George testified that he did not issue Ms. Pinney a permanent impairment rating, Mr. Carrera argued that Ms. Pinney had failed to provide "objective findings" of a permanent injury.

¶9    The district court denied this motion. It concluded that the statute does not contain a "specific requirement that there be a permanent disability rating or a permanent impairment rating." And it concluded that Dr. George's testimony regarding the nature of Ms. Pinney's injuries was "sufficient to be an objective finding of a permanent injury." The court of appeals affirmed this ruling, holding that the term "objective findings" requires only that a plaintiff demonstrate a permanent disability or impairment "through evidence other than the plaintiff's own subjective testimony."[5]

¶10    Before the district court, Mr. Carrera also brought a motion for a new trial under Rule 59 of the Utah Rules of Civil Procedure. Specifically, he argued that the court should order a new trial on the amount of damages because (1) the damage award was not supported by the evidence on record and (2) the damage award amount was so excessive that it appeared to have been given under the influence of passion or prejudice.

¶11    The district court also denied this motion, explaining that the "amount of the award was supported by the evidence presented at trial in the form of Dr. George's testimony, the MRI

---

[3] UTAH CODE § 31A-22-309(1)(a)(iii).

[4] We note that on re-direct examination, Dr. George explained that a "permanent impairment rating" is needed only where a patient intends to apply for governmental benefits.

[5] *Pinney v. Carrera*, 2019 UT App 12, ¶ 27, 438 P.3d 902.

showing permanent injuries, and testimony related to [Ms. Pinney's] limitations, pain, and effect on her life." And the court explained that the award was not so excessive that it appeared to have been given under the influence of passion or prejudice, because of the ample evidence regarding Ms. Pinney's pain and suffering and because the jury "did not provide the full amount" that Ms. Pinney had requested.

¶12 The court of appeals affirmed. It held that evidence on the record "gave the jury a reasonable basis upon which to rely when it awarded damages."[6] And in so doing, it noted the district court's finding that Ms. Pinney's counsel requested a damage award much greater than what the jury awarded.[7]

¶13 Mr. Carrera filed a petition for a writ of certiorari regarding the court of appeals' interpretation of the term "objective findings" as it is used in Utah Code section 31A-22-309 and its holding related to Mr. Carrera's motion for a new trial. We granted the petition on both issues. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Standards of Review**

¶14 "On a writ of certiorari, we review the decision of the court of appeals . . . and apply the same standard[s] of review used by the court of appeals."[8] In conducting this review, we grant no deference to the court of appeals' decision.[9] Mr. Carrera asks us to review two aspects of the court of appeals' decision. First he asks us to review the court of appeals' interpretation of a statute. "We review questions of statutory interpretation for correctness."[10] Second, he asks us to review the court of appeals' affirmance of the district court's denial of his motion for a new trial. We review a district court's denial of a motion for a new trial for an abuse of discretion.[11]

---

[6] *Id.* ¶ 36.

[7] *Id.* ¶ 35.

[8] *State v. Wilder*, 2018 UT 17, ¶ 15, 420 P.3d 1064 (second alteration in original).

[9] *Id.*

[10] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863.

[11] *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991).

**Analysis**

¶15 Mr. Carrera raises two issues regarding the court of appeals' decision. First, he argues that it erred in interpreting the term "objective findings" as it appears in Utah Code section 31A-22-309(1)(a)(iii). The court of appeals interpreted "objective findings" to mean findings that are "based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions."[12] Mr. Carrera, on the other hand, argues that "objective findings" means findings that are not tainted by an individual's bias. Although the term "objective" is commonly used in either sense, we conclude that, in the context of section 31A-22-309(1)(a), Mr. Carrera's proposed interpretation is unworkable. So we affirm the court of appeals on this point.

¶16 Second, Mr. Carrera argues that the court of appeals erred in affirming the district court's denial of his new trial motion. We affirm the court of appeals on this point because, after considering the evidence on record, we conclude the district court did not abuse its discretion in denying Mr. Carrera's motion.

## I. The Court of Appeals Did Not Err in Interpreting the Phrase "Objective Findings"

¶17 Under Utah law most motor vehicle owners "may not maintain a cause of action for general damages" arising out of injuries sustained in an automobile accident unless that person "has sustained one or more of the following: (i) death; (ii) dismemberment; (iii) permanent disability or permanent impairment based upon *objective findings*; (iv) permanent disfigurement; or (v) medical expenses to a person in excess of $3,000."[13] Mr. Carrera argues that, under this statute, Ms. Pinney is

---

[12] *Pinney v. Carrera*, 2019 UT App 12, ¶ 26, 438 P.3d 902 (quoting *Objective*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

[13] UTAH CODE § 31A-22-309(1)(a) (emphasis added). The court of appeals interpreted the phrase "may not maintain a cause of action" as imposing on plaintiffs the burden of proving whether one of the five threshold injuries identified in the statute exists. *Pinney v. Carrera*, 2019 UT App 12, ¶ 16, 438 P.3d 902. We agree. As it is used in the statute, the plain meaning of the phrase "may not maintain" suggests that a plaintiff's cause of action fails where the plaintiff cannot prove that he or she sustained one of the five identified injuries. *See Maintain*, MERRIAM-WEBSTER'S COLLEGIATE
(Continued)

not entitled to general damages, because she has failed to prove that she sustained any of the five injuries identified in the statute. We disagree and, in so doing, affirm the decisions of the district court and the court of appeals.

¶18 The district court and the court of appeals correctly concluded that Ms. Pinney satisfied the statute's requirements by demonstrating, through "objective findings," that she suffered a permanent impairment. The district court determined that Ms. Pinney satisfied the requirements of the statute because she had provided "objective findings" of a permanent injury through the testimony of her treating physician, Dr. George. The court of appeals affirmed.

¶19 In reviewing the decision of the district court, the court of appeals interpreted several terms contained in the statute. First, it relied on one of our earlier cases to conclude that a disability or impairment is "permanent" "whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."[14] Then it interpreted the term "disability" to mean "the inability to work"

---

DICTIONARY (10th ed. 1998) ("[T]o sustain against opposition or danger: uphold and defend [a position]."); *Maintain*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To continue (something). . . . To assert (a position or opinion); to uphold (a position or opinion) in argument."). Accordingly, defendants in automobile accident cases may challenge requests for general damages on this ground at any appropriate stage of litigation. For example, where plaintiffs fail to plead facts that, if proven, would satisfy this statute, defendants may challenge the request for general damages by bringing a motion to dismiss. And where the facts of the case are such that there is "no genuine dispute" as to whether the statute is or is not satisfied, either party may bring a motion for summary judgment on the issue. *See* UTAH R. CIV. P. 56(a). But where a genuine factual dispute remains regarding whether the plaintiff has satisfied the requirements of this statute, the dispute must be decided by the fact finder at trial.

¶14 *Pinney*, 2019 UT App 12, ¶ 24 (quoting *Ralston v. Metropolitan. Life Ins. Co.*, 62 P.2d 1119, 1123 (Utah 1936)).

and the term "impairment" to mean "the loss of bodily function."[15] Finally, the court interpreted the phrase "objective finding."[16]

¶20 The court of appeals interpreted the phrase "objective findings" in two steps. First, it cited Black's Law Dictionary, which defines "objective" as "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions."[17] And second, it cited one of its previous cases, in which it held that a plaintiff had failed to provide "objective findings" of a permanent injury where the plaintiff did not support his claim "with something more than his say so."[18] After considering these sources, the court concluded that, to be considered "objective," "a finding need only be demonstrated through evidence other than the plaintiff's own subjective testimony."[19]

¶21 On certiorari, Mr. Carrera challenges only the court of appeals' definition of the phrase "objective findings." He asserts that, instead of the definition of "objective" relied on by the court of appeals—"[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions"—"objective" should be defined as "expressing or dealing with facts or conditions as perceived without distortion by personal feelings, prejudices, or interpretations."[20] In other words, he argues that the term "objective" should be interpreted to require *unbiased* findings of permanent disability or impairment.

¶22 When interpreting a statute, "our primary goal is to evince the true intent and purpose of the [l]egislature."[21] "The best evidence of the legislature's intent is the plain language of the

---

[15] *Id.* ¶ 25.

[16] *Id.* ¶¶ 26–27.

[17] *Id.* ¶ 26 (internal quotation marks omitted).

[18] *Id.* ¶ 26 (emphasis omitted) (quoting *McNair v. Farris*, 944 P.2d 392, 395 (Utah Ct. App. 1997)).

[19] *Id.* ¶ 27.

[20] *Objective*, THE MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/objective (last visited June 22, 2020).

[21] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (internal quotation marks omitted).

statute itself."[22] In considering the language of a statute, "we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."[23] And we "avoid interpretations that will render portions of a statute superfluous or inoperative."[24] Because Mr. Carrera's interpretation of the statute would render the "permanent disability or permanent impairment" subsection inoperative, we reject it.

¶23 As we have explained, Mr. Carrera argues that the term "objective" should be interpreted to require unbiased findings of a permanent disability or impairment. And he argues that, because a *treating* physician's relationship with a plaintiff creates an "inherent potential for bias," the statute requires a plaintiff to show the existence of a permanent disability or impairment "through an *independent*" medical provider. But interpreting the term "objective" in this way would render the statutory provision at issue inoperative.

¶24 The statute imposes a burden on the plaintiff to prove that one of the circumstances enumerated in the statute exists.[25] But, under Mr. Carrera's interpretation of "objective," a plaintiff could never prove the existence of a permanent disability or impairment.

¶25 For example, although Mr. Carrera suggests that his reading of the statutory requirement could be satisfied by the testimony of a non-treating physician, he fails to explain how a non-treating physician retained and paid by the plaintiff would satisfy his proposed "lack of bias" requirement. As Ms. Pinney points out in her brief, "even a non-treating physician is subject to bias, prejudice, and personal feelings, especially so when one of the parties is paying financial compensation to the physician." In other words, if it is true that the "inherent potential for bias" stemming from a *treating* physician's relationship with a plaintiff would disqualify the treating physician, then the financial relationship between a plaintiff and the non-treating physician the plaintiff retained for the purposes of litigation would also preclude the

---

[22] *Id.* (citation omitted) (internal quotation marks omitted).

[23] *Id.*

[24] *Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 9, 173 P.3d 166 (internal quotation marks omitted).

[25] *See supra* ¶ 17 n.13.

*non-treating* physician. So, in order to satisfy the requirements of the statute, as Mr. Carrera interprets it, a plaintiff would need to present a physician who would be willing to testify on the plaintiff's behalf without being compensated and without otherwise being biased in the plaintiff's favor. The practical result of Mr. Carrera's proposed interpretation would be to render the statute's requirements impossible to satisfy in the absence of a court-appointed expert or a stipulation. Thus plaintiffs, on their own, could never satisfy their burden of proof. Because this would render the "permanent disability or permanent impairment" subsection inoperative, we decline to read the term "objective findings" to require findings made by a wholly independent and unbiased witness.

¶26 Alternatively, Mr. Carrera argues that even were we to decline to interpret the term "objective" as requiring testimony from an unbiased, medical expert, we should nevertheless require all medical experts to be "self-reportedly objective." In other words, he argues that even if the term "objective" does not require findings wholly free from bias, we should nevertheless interpret the statute as precluding a plaintiff from relying on any expert who openly acknowledges the potential for bias. But we reject this alternative interpretation because, having rejected Mr. Carrera's argument that the term "objective" should be defined as "unbiased," we see nothing in the plain language of the statute that would invalidate the testimony of a physician who acknowledges the potential for bias in his or her findings.

¶27 Accordingly, we affirm the definition of "objective findings" adopted by the court of appeals. Under this definition, a finding of a permanent disability or impairment must be based on externally verifiable phenomena rather than on an individual's perceptions, feelings, or intentions.[26] This means plaintiffs cannot

---

[26] We note that our interpretation of the term "objective findings" is consistent with the meaning provided in other Utah statutes. *See*, *e.g*, UTAH CODE § 58-40a-102(1) (referring to "objective findings" in a context that strongly suggests the term "objective" refers to "verifiable" findings rather than "unbiased" ones). It is also consistent with the definition adopted for the term by other states. *See* OKLA. STAT. tit. 85A, § 2(31)(a)(3)(a) (explaining that "Objective findings" "may be established by medically recognized and accepted clinical diagnostic methodologies"); OR. REV. STAT.

(Continued)

satisfy the statutory requirement merely be testifying that they believe they are permanently disabled or impaired. Instead, plaintiffs must provide externally verifiable evidence of a permanent disability or impairment. We conclude that the evidence provided by Ms. Pinney satisfies this requirement.

¶28 Dr. George, Ms. Pinney's chiropractor, testified that Mr. Carrera's crash into Ms. Pinney's vehicle caused her to sustain a permanent herniated disc in her back. And he specifically testified that the herniated disc constituted "a permanent injury." He also testified that scar tissue, stemming from injuries sustained in the crash, inhibited Ms. Pinney's range of motion, and that treatment failed to restore her range of motion back to "100 percent." He further testified that "the scar tissue is permanent." And, importantly, he explained that all of his conclusions were based on multiple x-rays and an MRI of Ms. Pinney's injuries, as well as on his medical examinations of her during the course of her treatment. This testimony constitutes externally verifiable evidence that Ms. Pinney sustained a permanent disability or impairment. So the statute does not preclude Ms. Pinney's general damage award.

¶29 In sum, we interpret the phrase "objective findings" to require findings regarding a permanent disability or impairment to be based on externally verifiable phenomena rather than on an individual's subjective perceptions or feelings regarding the injury. Because Dr. George's testimony satisfies the "objective findings" requirement in the statute, the statute does not preclude an award of general damages in this case. Accordingly, we affirm the court of appeals on this point.

---

§ 656.005(19) (defining "Objective findings" as "verifiable indications of injury or disease"); *State v. Reynolds*, 983 A.2d 874, 882–83 (Conn. App. Ct. 2009) (discussing a distinction "in medical terminology, between objective findings, which are based on the observations of a medical provider, and subjective findings, which are based on the information provided to a medical provider by a patient"); *Felipe v. Dep't of Labor & Indus.*, 381 P.3d 205, 208–09 (Wash. Ct. App. 2016) ("Objective findings of disability are those that can be seen, felt, or measured by a physician. Subjective findings are those based on the patient's report to the physician about symptoms perceived only by the senses and feelings of the patient." (footnotes omitted)).

## II. The Court of Appeals Did Not Err in Affirming Ms. Pinney's Damage Award

¶30 We also affirm the court of appeals' decision regarding Mr. Carrera's motion for a new trial. Mr. Carrera argues that the court of appeals erred in affirming the district court's denial of his new trial motion because (1) the damage award was not supported by the evidence on record and (2) the damage award amount was so excessive that it appeared to have been given under the influence of passion or prejudice. We disagree. The court of appeals correctly concluded that the district court did not abuse its discretion on either point.[27]

### A. The damage award was supported by sufficient evidence

¶31 First, the court of appeals correctly concluded that the damage award was supported by sufficient evidence. Under Rule 59(a)(6) of the Utah Rules of Civil Procedure, "a new trial may be granted" where there is an "insufficiency of the evidence to justify the verdict." Mr. Carrera argues that there is insufficient evidence to support the jury's damage award. But juries are "generally allowed wide discretion in the assessment of damages."[28] So, under our abuse of discretion standard of review, we will reverse a jury's damage award "only if there is no reasonable basis for the decision."[29]

¶32 We conclude that there is a reasonable basis for the jury's damage award. The court of appeals determined that (1) testimony regarding Ms. Pinney's inability to do some of the things she used to be able to do and (2) testimony regarding the permanent nature of Ms. Pinney's injury "gave the jury a reasonable basis upon which to rely when it awarded damages."[30] On certiorari, Mr. Carrera does not attempt to rebut this testimony or explain why it is insufficient. Instead, he states only that the award was insufficient "in light of the fact that [Ms. Pinney] did not present evidence of special [(or specific)] damages at trial." But the lack of evidence regarding specific damages does not negate the evidence for

---

[27] *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991) (explaining that a district court's denial of a motion for a new trial is reviewed for an abuse of discretion).

[28] *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 71, 372 P.3d 629.

[29] *Id.* (internal quotation marks omitted).

[30] *Pinney v. Carrera*, 2019 UT App 12, ¶ 36, 438 P.3d 902.

general damages on the record. Because the evidence regarding general damages provides a reasonable basis for the jury's general damage award, we affirm the court of appeals.

### B. The damage award was not so excessive as to appear to have been given under the influence of passion or prejudice

¶33 The court of appeals also correctly concluded that the damage award was not improperly excessive. Under Rule 59(a)(5) of the Utah Rules of Civil Procedure, "a new trial *may* be granted" where there are "excessive or inadequate damages that appear to have been given under the influence of passion or prejudice."[31] So to succeed under rule 59(a)(5), a party must show, first, that a damage award is excessive or inadequate and, second, that the excessiveness or inadequacy of the award appears to have stemmed from passion or prejudice. Because Mr. Carrera fails to show that the damage award in this case was excessive, his rule 59(a)(5) argument fails.

¶34 Mr. Carrera argues that the amount of general damages awarded in this case—$300,000—is improperly excessive when viewed in proportion to the amount of specific damages awarded—$0. But this argument fails because specific damages and general damages are meant to measure different types of harm.

¶35 Specific damages measure harm that is "considered more finite, measurable, and 'economic' because [it is] more easily calculated" in specific dollar amounts.[32] In other words, specific (or "economic") damages are "'hard' amounts [that are] subject to careful calculation" such as the cost of "medical and other necessary care" or a decrease in "earning ability."[33]

¶36 In contrast, general damages, which are sometimes referred to as "pain and suffering" or "noneconomic" damages, measure the amount needed to compensate an individual for a

---

[31] Utah R. Civ. P. 59(a)(5) (emphasis added); *see also Wheat v. Denver & R.G.W.R. Co.*, 250 P.2d 932, 935 (Utah 1952) ("[W]e must determine whether the present verdict is so grossly excessive and disproportionate to the injury that it can be said from such fact alone, as a matter of law that the verdict must have been arrived at because of passion and prejudice." (internal quotation marks omitted)).

[32] *Judd v. Drezga*, 2004 UT 91, ¶ 4, 103 P.3d 135.

[33] *Id.*

"diminished capacity for the enjoyment of life."[34] In other words, general damages attempt to measure "the difference between what life would have been like without the harm done . . . and what it is like" as a result of the harm.[35] So the type of harm for which general damages are awarded is markedly different from the type of harm underlying a specific damage award.

¶37 Because specific and general damages are aimed at measuring different types of harm, the fact finder need not consider the same factors in calculating an appropriate amount for each type of award. For example, a typical jury instruction for general damages instructs the fact finder to consider such factors as "the nature and extent of injuries," "the extent to which [the plaintiff] has been prevented from pursuing [his or her] ordinary affairs," "the extent to which [the plaintiff] has been limited in [the] enjoyment of life," and "whether the consequences of these injuries are likely to continue, and for how long."[36] Specific damages, on the other hand, are calculated based on "the amount of money that will fairly and adequately compensate" the plaintiff for measurable losses of money or property caused by the defendant's fault.[37] Because the factors used to calculate general damage awards differ from those used to calculate specific damage awards, there is no reason why the amount of one type of damage award would need to be proportional to the other.

¶38 So even though an award of general damages may be improperly excessive where the amount awarded is grossly disproportionate to the harm suffered (based on relevant general-damage factors),[38] we will not overturn a general damage award on the ground that the plaintiff presented no evidence of economic harm. Accordingly, Mr. Carrera's proportionality argument fails.

¶39 Mr. Carrera also argues that he's entitled to a new trial on damages because the general damage award was likely given "under the influence of passion or prejudice." But there is nothing

---

[34] *Id.*

[35] *Id.*

[36] *See*, *e.g.*, *Pinney*, 2019 UT App 12, ¶ 8.

[37] *Brereton v. Dixon*, 433 P.2d 3, 5 (Utah 1967).

[38] *See Wheat*, 250 P.2d at 935 (asking whether an award was "disproportionate to the injury").

on the face of the award that would suggest that the jury acted improperly in calculating damages.

¶40 As we have explained, general damages are meant to measure "the difference between what life would have been like without the harm done . . . and what it is like" as a result of the harm.[39] Ms. Pinney presented ample evidence that her injuries had diminished her ability to do certain things and that her injuries were permanent. Based on the pain and suffering stemming from these injuries, she argued that she should be compensated in an amount somewhere between $50 and $75 per day until she reached the age of eighty. But instead of awarding Ms. Pinney the full amount she requested—which would have amounted to between $419,000 and $630,000—the jury awarded her $300,000 (or approximately $35 per day). Based on the facts of this case, the amount Ms. Pinney received is not "so grossly excessive and disproportionate" to her injury that the district court clearly erred in denying Mr. Carrera's rule 59 motion.[40]

¶41 And this conclusion is not altered by any of the record evidence to which Mr. Carrera points. Mr. Carrera argues that Ms. Pinney "stoked the fire" of prejudice by making a number of improper comments. But Mr. Carrera did not object to any of these allegedly improper comments at trial, and we therefore do not review them for error. Instead, we consider these comments only to the extent they are relevant to our analysis under rule 59(a)(5).[41]

---

[39] *Judd*, 2004 UT 91, ¶ 4.

[40] *Wheat*, 250 P.2d at 935. In denying Mr. Carrera's request for a new trial, the district court appeared to rely heavily on the fact that the jury awarded Ms. Pinney less than she asked for. Although we affirm the district court's decision based on the facts of this case, we note that the amount requested by the plaintiff does not provide a reliable standard upon which to measure the reasonableness of a jury award.

[41] Under a rule 59(a)(5) analysis, a court may consider any evidence presented to the jury, whether it could have been excluded with a timely objection or not. But, as our resolution of the issue in this case demonstrates, where the court determines that the damage amount is reasonable, the analysis stops there. So, in a rule 59(a)(5) analysis, it is only as the amount of the award reaches unreasonable levels that a court would begin searching for

(Continued)

In other words, we consider these comments only in our attempt to determine whether the damage award is so "excessive . . . that [it] appear[s] to have been given under the influence of passion or prejudice."[42] And under this standard, we do not find that the allegedly improper comments warranted a new trial. Although improper statements made to a jury could help explain how a jury arrived at an extremely high damage award in some cases, we conclude—based on the amount of the award and the evidence supporting it—that the jury award does not appear to be the result of passion or prejudice. So the district court did not abuse its discretion in denying Mr. Carrera's motion for a new trial.

¶42  In sum, Mr. Carrera fails to show that the damage award was unsupported by the evidence or was improperly excessive. Accordingly, we affirm the court of appeals.

## Conclusion

¶43 Mr. Carrera argues that the court of appeals erred in interpreting the term "objective findings" as it appears in Utah Code  section 31A-22-309(1)(a)(iii) and in affirming the district court's denial of his new trial motion. Because the court of appeals correctly interpreted the statute to require only findings that are "based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions,"[43] and because the evidence on record leads us to conclude that the district court did not abuse its discretion in denying Mr. Carrera's motion, we affirm the court's decision on both points.

_____

potentially prejudicial evidence that could help explain the award's unreasonableness.

[42] UTAH R. CIV. P. 59(a)(5).

[43] *Pinney v. Carrera*, 2019 UT App 12, ¶ 26, 438 P.3d 902  (internal quotation marks omitted).