**2023 UT App 21**

# THE UTAH COURT OF APPEALS

ACCESSLEX INSTITUTE,
Appellee,
*v.*
JAY PHILPOT,
Appellant.

Opinion
No. 20210596-CA
Filed March 2, 2023

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 199402342

Jay Philpot, Appellant Pro Se

Spencer B. Lythgoe, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HARRIS, Judge:

¶1      Jay Philpot borrowed money, in eight separate loan installments, from Accesslex Institute (Lender) to finance his law school education, but Philpot did not completely repay the loans. Many years later, Lender filed suit to collect the unpaid balance. Philpot's chief defense to the lawsuit—which defense he attempted to raise at several different procedural stages—was that Lender's lawsuit was untimely and barred by the applicable statute of limitations. The trial court rejected each of Philpot's requests to dismiss the case on timeliness grounds, and later—after a bench trial—entered judgment in favor of Lender. Philpot now appeals the denial of his various requests to dismiss the case on timeliness grounds. We affirm.

BACKGROUND

¶2    Between 2004 and 2007, when Philpot was a law student in Michigan, he applied for and received eight student loans from Lender. For each loan, Philpot signed a separate application in which he stated, among other things, that his permanent residence was in Utah. In 2009, Philpot defaulted on all eight loans, and he made his last payment on August 28, 2012. As of September 2012, the unpaid balance on the loans was $144,136.85.

¶3    Some six years later, on August 27, 2018, Lender[1] filed suit, in Utah, against Philpot to collect that balance. In August 2019, Lender's lawsuit was dismissed without prejudice, for reasons unclear from this record. A few weeks later, however, Lender filed another suit—the instant lawsuit—against Philpot to collect the student loan balance, apparently relying on Utah's "savings statute," a law that allows a plaintiff one opportunity to refile "within one year" a suit that is dismissed for reasons other "than upon the merits." *See* Utah Code § 78B-2-111(1).

¶4    In its complaint, Lender asserted eight separate claims, all for breach of a written contract, against Philpot, and sought recovery of more than $140,000 in damages. Before answering the complaint, Philpot—at that point represented by counsel—filed a motion to dismiss, asserting generally that the complaint was time-barred and that it did not assert sufficient facts to establish either that Lender was the real party in interest or that it had

---

1. The 2018 lawsuit was filed by Lender using the name "Access Group, Inc." In the instant lawsuit, filed in 2019, Lender used the name "Accesslex Institute dba Access Group, Inc." For purposes of our analysis, we assume that "Accesslex Institute" was doing business as "Access Group, Inc.," and therefore that the entity that filed the 2019 lawsuit is the same entity that filed the 2018 lawsuit. Philpot makes no argument to the contrary on appeal.

suffered a breach of contract. The trial court denied the motion, as well as a post-ruling motion for reconsideration.

¶5    About a year later, now appearing pro se and without having taken any discovery, Philpot filed a motion for summary judgment, again asserting that Lender's complaint should be dismissed on timeliness grounds. This time, Philpot made the specific argument that the applicable statute of limitations should be supplied not by Utah law but, instead, by the law of another state pursuant to Utah's "borrowing statute." *See* Utah Code § 78B-2-103 ("A cause of action which arises in another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state . . . ."). In particular, Philpot argued that the applicable limitation period should be supplied by the law of Pennsylvania, the state where Lender had its headquarters, and asserted that Pennsylvania has a four-year (in contrast to Utah's six-year) statute of limitations applicable to claims for breach of a written contract. After oral argument, the trial court denied Philpot's motion, concluding that it did not "have th[e] facts" at its disposal necessary to determine certain important issues—for instance, when Philpot's last payment had been made and where Lender's cause of action arose—and that Philpot had therefore not carried his burden of demonstrating entitlement to summary judgment on his affirmative defense regarding timeliness.

¶6    The case then proceeded to a bench trial. Only one witness testified at that trial: Lender's director of loan recovery and collections (Witness). Witness testified that Lender's headquarters are in Pennsylvania, and that the date of Philpot's last payment on the loans was August 28, 2012. Witness also testified that, after Philpot defaulted on the loans in 2009, Lender retained a "third party collection agency" (Agency) to "service" payment and collection on the loans, and that any payments Philpot made after default, including the payment made in August 2012, were made to Agency rather than to Lender directly. On cross-examination,

Philpot asked Witness where Agency was "operating from," and Witness testified that Agency has "offices nationwide" in "various locations" and that he "didn't know where [Agency was] headquartered," but he stated that he "believe[d]" that the office Agency was "working it out of" was "somewhere in California" but that he couldn't "be certain."

¶7 As part of its case-in-chief, Lender offered into evidence copies of the loan contracts. Those contracts contain no provision setting forth the place in which the contracts are to be performed or to which payments are generally to be sent, but they direct Philpot to send any payments that need "special handling" to an address in Delaware. And the contracts contain a choice-of-law provision that indicates the parties' contractual agreement that Lender is "located in Ohio" and that states otherwise as follows:

> [Philpot's] application and Loan Agreement will be entered into in Ohio. [Lender's] decision on whether to lend [Philpot] money will be made in Ohio. CONSEQUENTLY, THE PROVISIONS OF [PHILPOT'S] LOAN WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO WITHOUT REGARD TO CONFLICT OF LAW RULES.

¶8 At trial, Philpot called no witnesses and presented no evidence, but he did cross-examine Witness.[2] At the conclusion of the presentation of evidence, Philpot made an oral motion for a "directed verdict," again asserting that Lender's complaint was barred on timeliness grounds. At one point during the ensuing

---

2. Philpot tried, unsuccessfully, to introduce impeachment evidence during his cross-examination of Witness by asking the court to look up something on Lender's website. The court declined that invitation, explaining to Philpot that courts do not "go out on the internet to search at the request of the parties."

argument on the motion, Philpot attempted to lay blame for any absence of supporting facts on Lender, asserting that he was "never given dates" and other information by Lender regarding the facts relevant to his statute of limitations defense. The court rejected any such argument, pointing out that Philpot bore the burden of proof on that affirmative defense and had had "the opportunity to discover" and "the opportunity to depose" yet had not done any discovery, and therefore the court stated that it was "not going to hear arguments now that [Lender] somehow interfered with [Philpot's] ability to present [his] case."

¶9    After hearing argument from the parties on Philpot's impromptu motion, the court allowed Philpot to file a written brief in support of the motion and took the matter under advisement until briefing was complete. In his brief, Philpot asserted that the proper statute of limitations was Pennsylvania's four-year statute, which was applicable to Lender's Utah lawsuit by virtue of Utah's borrowing statute. In its opposition brief, Lender asserted that Philpot had not carried his burden of demonstrating, as a matter of law, that Pennsylvania's four-year statute of limitations applied to this case. The court then issued a written decision denying Philpot's motion, agreeing with Lender that Philpot had not carried his burden.

¶10    The court then scheduled a hearing for the purpose of "provid[ing] the parties an opportunity to present closing arguments if they choose to do so." On the appointed day, Lender's counsel offered a brief closing argument on the merits, arguing that the evidence presented at the trial was more or less undisputed and indicated that Philpot had breached his contracts and that Lender was entitled to recover the amount it sought as damages. In response, Philpot did not contest Lender's merits-based contentions, but instead made further argument about the borrowing statute and timeliness, asserting that the applicable statute of limitations should be supplied by, variously, the laws of Pennsylvania (where Lender was headquartered), Delaware

(where the contracts required payments necessitating "special handling" to be sent), California (where Agency was perhaps based), or Ohio (where the contracts indicated Lender was based). In rebuttal, Lender's counsel continued to argue—as it had in its post-trial memorandum opposing Philpot's motion—that Philpot had not carried his burden on his affirmative defense, and in addition argued that Philpot could not prevail if Delaware, California, or Ohio supplied the applicable statute of limitations, because some of those states had statutes of limitations as long as—or longer than—Utah's, and because some of those states had "tolling statutes" that Lender asserted prevented suit from being filed against Philpot in those jurisdictions as long as Philpot was absent from those jurisdictions.

¶11    A few weeks later, the trial court issued post-trial findings and conclusions. The court re-addressed Philpot's timeliness defense, and again concluded that Philpot had "not met his burden to show that [Lender's] cause of action arose in Pennsylvania" or any other foreign jurisdiction. Because Philpot had not met his burden, the court applied Utah's six-year statute of limitations for claims based upon a written contract, and concluded that Lender's claim was timely: the limitation period began to run on August 28, 2012, when Philpot made his last payment on the loans; Lender filed the first lawsuit one day before that six-year period expired; and the instant lawsuit was timely filed pursuant to Utah's savings statute. On the merits, the court concluded that Philpot had breached the written contracts, and that Lender was entitled to judgment in its favor in the amount of $144,136.85, "plus interest, costs and attorney fees as provided by the parties' contract." Later, the court entered judgment in Lender's favor in the amount of $144,541.85.

ISSUES AND STANDARDS OF REVIEW

¶12    Philpot now appeals the trial court's orders denying his various attempts to obtain dismissal of Lender's lawsuit on

timeliness grounds. In particular, Philpot appeals (a) the court's denial of his motion to dismiss, (b) the denial of his motion for summary judgment, (c) the denial of his post-evidence motion, and (d) the court's ultimate post-trial finding that he had not carried his burden of proof on his affirmative defense. We review these various challenges under different standards.

¶13    We review a trial court's decision on a motion to dismiss "for correctness, granting no deference to the decision of the [trial] court." *Lewis v. U.S. Bank Tr. NA*, 2020 UT App 55, ¶ 8, 463 P.3d 694 (quotation simplified).

¶14    "We will affirm the denial of a motion for judgment as a matter of law when a review of the evidence in a light most favorable to the non-moving party demonstrates that reasonable minds could disagree with the ground asserted for the motion." *Pinney v. Carrera*, 2019 UT App 12, ¶ 20, 438 P.3d 902 (quotation simplified), *aff'd*, 2020 UT 43, 469 P.3d 970; *accord Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 29, 438 P.3d 25, *aff'd*, 2020 UT 59, 472 P.3d 927.

¶15    "On appeal from a bench trial, we review the court's legal conclusions for correction of error, and we will not disturb the court's findings of fact unless they are clearly erroneous." *Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 13, 473 P.3d 624 (quotation simplified); *see also Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 23, 507 P.3d 357 (stating that "following a bench trial, we review a trial court's legal conclusions for correctness, according the trial court no particular deference," and "we review the court's findings of fact for clear error, granting due regard to the opportunity of the trial court to judge the credibility of the witnesses" (quotation simplified)).

¶16    And because we determine—as discussed below—that the trial court's order denying Philpot's motion for summary

judgment is not here reviewable, we need not concern ourselves with the standard by which we would review that order.

ANALYSIS

¶17 The issues Philpot raises share a common theme: that Lender's suit was untimely and should have been dismissed on that basis. An argument like this—a defendant's claim that a plaintiff's case was untimely filed—constitutes an affirmative defense. *See, e.g., Barnard & Burk Group, Inc. v. Labor Comm'n*, 2005 UT App 401, ¶ 6, 122 P.3d 700 ("Statute of limitations defenses are affirmative defenses and are waived unless properly raised." (quotation simplified)). "An affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *State v. Lynch*, 2011 UT App 1, ¶ 16, 246 P.3d 525 (quotation simplified); *see also Prince v. Bear River Mutual Ins. Co.*, 2002 UT 68, ¶ 31, 56 P.3d 524 (stating that an "affirmative defense is a defense employed to defeat the plaintiff's claim by raising matters outside or extrinsic to the plaintiff's prima facie case").

¶18 While a plaintiff bears the burden of proving its own claims, a defendant—at least in civil cases—bears the burden of proof with regard to affirmative defenses. *See Fritsche v. Deer Valley Ridge at Silver Lake Ass'n of Unit Owners*, 2022 UT App 11, ¶ 40, 504 P.3d 761. Because a statute of limitations defense falls into the category of "affirmative defenses," it is the defendant who bears the burden of proof on that defense. *See Christiansen v. Union Pac. R.R. Co.*, 2006 UT App 180, ¶ 12, 136 P.3d 1266 ("Because the limitations period operates as an affirmative defense, the defendant has the initial burden of proving that the limitations period has run."). Thus, the trial court correctly determined that Philpot—and not Lender—bore the burden of proof with regard to Philpot's statute of limitations defense.

¶19 The court also correctly determined that, if Utah law supplies the relevant statute of limitations, then Lender's lawsuit was timely filed.[3] Lender's lawsuit alleges breach of a series of written contracts and, in Utah, the statute of limitations for "any contract, obligation, or liability founded upon an instrument in writing" is six years. *See* Utah Code § 78B-2-309(1)(b). And under Utah law, that six-year period starts to run "from the date (a) the debt arose; (b) a written acknowledgement of the debt or a promise to pay is made by the debtor; or (c) a payment is made on the debt by the debtor." *Id.* § 78B-2-113(1). The trial court made an unchallenged finding that Philpot made his last loan payment on August 28, 2012, and Lender filed its initial suit against Philpot on August 27, 2018, one day prior to the sixth anniversary of Philpot's last payment on the loans. And although that initial suit was dismissed without prejudice, Lender refiled the case just a few weeks following the first case's dismissal, thus complying with Utah's savings statute. *See id.* § 78B-2-111(1).

¶20 There is a presumption, applicable in Utah courts, that Utah statutes of limitations will apply to lawsuits filed in Utah. *See Financial Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994) (stating that, "as a general rule, Utah's statutes of limitations apply to actions brought in Utah"). Thus, unless the parties demonstrate otherwise, the applicable statute of limitations for this case—filed by Lender in Utah—will be supplied by Utah law. And because Philpot bore the burden of proof on his statute of limitations defense, the burden was on Philpot to demonstrate that another state's law should supply the statute of limitations applicable to Lender's claims.

---

3. Indeed, although Philpot challenges the court's determination that Utah law supplies the relevant statute of limitations, he does not challenge the court's conclusion that *if* Utah law supplies the limitation period, then Lender's lawsuit is timely.

¶21 In an attempt to shoulder this burden, Philpot invokes Utah's "borrowing statute," a law that constitutes "[a]n exception to [the general] rule that the law of the forum governs limitation periods." *Id.* at 17. Under the terms of that statute, "[a] cause of action which *arises in* another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state." Utah Code § 78B-2-103 (emphasis added). "This statute creates a two-part test." *Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 18, 384 P.3d 221. Under the first part, a court must consider whether the applicable cause of action arose in another jurisdiction. *Id.*; *see also Financial Bancorp.*, 880 P.2d at 17 (observing that, "in order to determine the applicability of" the borrowing statute, "we must first determine" whether the applicable cause of action arose in a jurisdiction other than Utah). Under the second part, a court must consider whether, under the laws of that other jurisdiction, the cause of action would be barred by the applicable statute of limitations. *See Libby*, 2016 UT 41, ¶ 18. And because Philpot bore the burden of proof on his affirmative defense, he bore the burden of demonstrating both (a) that Lender's causes of action arose somewhere other than Utah, and (b) that Lender's causes of action would be barred under the laws of the state where the causes of action arose.

¶22 "Unless the contract states otherwise, a cause of action for a breach of contract generally arises where the contract is to be performed." *Financial Bancorp.*, 880 P.2d at 17. Both parties assume, in the context of this case, that the relevant "performance" on the contracts between Philpot and Lender was Philpot's payment. And on the question of where Philpot's loan payments were to be made, the evidence in the record is conflicting, to say the least, and permits at least five possibilities: Pennsylvania, Delaware, Ohio, California, and Utah. Indeed, the following facts were established at trial:

- Lender was headquartered in Pennsylvania;

- The loan contracts were silent on place of payment other than to say that payments requiring "special handling" were to be sent to an address in Delaware;

- The contracts specified that they were entered into in Ohio and that the "provisions of" the loans would be governed by Ohio law;

- Lender, after Philpot's 2009 default, had retained Agency, a third-party "servicer," to collect Philpot's payments, and Philpot had made at least some payments to Agency;

- Agency was "operating from" "offices nationwide" in "various locations," but was perhaps "working [this case] out of" California; and

- Philpot lived in Utah and the case was filed in Utah.

¶23   Based on the facts presented, the trial court ultimately determined, in several different procedural contexts, that Philpot failed to carry his burden of demonstrating that Lender's causes of action arose in any particular state outside of Utah, and that Philpot had therefore not met the first part of the borrowing statute's two-part test. Philpot challenges these rulings, and we proceed to examine each of them, in turn, with this legal background in mind. For the reasons discussed, we perceive no error in the trial court's rulings.

### A. The Motion to Dismiss Ruling

¶24   Philpot first contends that the trial court erred by denying his motion to dismiss, in which he asserted that—even taking the allegations on the face of the complaint as true—Lender had failed to allege facts sufficient to establish that its complaint had been

timely filed, that it was the real party in interest, or that it had suffered a breach of contract. In reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). "A complaint does not fail to state a claim unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *First Interstate Fin. LLC v. Savage*, 2020 UT App 1, ¶ 10, 458 P.3d 1161 (quotation simplified).

¶25     "In order to properly state a claim for breach of contract, a party must allege sufficient facts, which we view as true, to satisfy each element" of the claim. *See America West Bank Members, LC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (quotation simplified). "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Id.* (quotation simplified). The trial court correctly concluded that Lender set forth facts sufficient to meet this standard.

¶26     In its complaint, Lender alleged that it agreed to "provide a student loan to [Philpot] in exchange for [Philpot] making payments on the loan." Lender alleged that "student loan funds were provided to [Philpot] at his request." Lender further alleged that Philpot breached the contracts by "failing to make all payments when due." And Lender alleged that it had sustained damages as a result of Philpot's breaches. Thus, Lender set forth facts that, if true, could support a claim for breach of contract.

¶27     It is true that Lender did not set forth facts, in its complaint, from which one could ascertain whether the complaint was timely filed. But as already noted, an argument that a complaint is time-barred constitutes an affirmative defense on which the defendant bears the burden of proof, and therefore a plaintiff is not

ordinarily required to set forth, in its complaint, facts necessary to demonstrate that the complaint was timely filed. Indeed, "a complaint need not anticipate any of a variety of affirmative defenses, including the statute of limitations, which a defendant must elect to raise." *Pierucci v. Pierucci*, 2014 UT App 163, ¶ 16, 331 P.3d 7. In certain cases, where a complaint does "include[] all information, including salient dates," necessary to determine that the complaint is time-barred, such an argument may be considered in the context of a motion to dismiss. *See Young Res. Ltd. P'ship v. Promontory Landfill, LLC*, 2018 UT App 99, ¶ 18, 427 P.3d 457 (quotation simplified). But where the complaint does not set forth information sufficient to ascertain that it is time-barred on its face, the complaint is not subject to dismissal at the motion to dismiss stage, and the defendant must raise the timeliness issue, if at all, in a later stage of the proceedings.

¶28    In this case, nothing on the face of Lender's complaint indicated that it was untimely filed, and Lender included all of the factual allegations necessary to support a claim for breach of contract. Accordingly, the trial court correctly denied Philpot's motion to dismiss the complaint.

## B. The Summary Judgment Ruling

¶29    Philpot next challenges the trial court's denial of his motion for summary judgment, in which Philpot again asserted that Lender's complaint should be dismissed on timeliness grounds. We are, however, unable to review the trial court's summary judgment decision in this case.

¶30    Utah case law is clear that "[a] denial of summary judgment is reviewable following a trial only if it's based on a purely legal question or on undisputed facts." *Arnold v. Grigsby*, 2018 UT 14, ¶ 15, 417 P.3d 606. "We do not review on appeal . . . whether a dispute of material fact existed at the summary judgment stage of a litigation if the trial court denies summary judgment." *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669;

*see also Peterson v. Hyundai Motor Co.*, 2021 UT App 128, ¶ 36, 502 P.3d 320 (stating that a denial of a motion for summary judgment "on the basis that there exists a material factual dispute" cannot be appealed). The reason for this well-established principle is that a denial of summary judgment does not preclude the parties' "opportunity to litigate factual disputes at trial" and "it would serve no legitimate judicial purpose to reach back and overturn a verdict on the merits based on a litigant's failure to adduce evidence in opposition to summary judgment if the relevant evidence was presented at trial." *Kerr*, 2013 UT 75, ¶ 30 (quotation simplified). Indeed, "the denial of summary judgment on evidentiary grounds should not 'become "a bomb planted within the litigation at its early stages and exploded on appeal."'" *Id.* (quoting *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 10, 215 P.3d 152, which in turn was quoting *Holley v. Northrop Worldwide Aircraft Services, Inc.*, 835 F.2d 1375, 1377 (11th Cir. 1988)).

¶31 Although "district courts are not required to specify the grounds on which they deny a motion for summary judgment," *Hone v. Advanced Shoring & Underpinning, Inc.*, 2012 UT App 327, ¶ 9 n.6, 291 P.3d 832 (quotation simplified), the court in this case explained that it denied the motion because it did not "have th[e] facts" at its disposal necessary to determine that Philpot was entitled to summary judgment. The court here thus clearly indicated that the basis for its ruling was factual rather than legal. Under these circumstances, we cannot review the merits of the court's decision to deny Philpot's summary judgment motion.

## C. The "Directed Verdict" Ruling

¶32 Next, Philpot challenges the trial court's denial of his impromptu post-evidence motion, in which he again raised the issue of the timeliness of Lender's complaint. After argument and briefing, the court issued a written decision denying Philpot's motion, agreeing with Lender that Philpot had not carried his burden of demonstrating, as a matter of law, that

Lender's complaint was untimely. The court made no error in so ruling.

¶33 Philpot described his motion as one for "directed verdict." But motions for "directed verdict," by definition, are contemplated only in jury trials. *See Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 10, 20 P.3d 388, *overruled on other grounds by A.S. v. R.S.*, 2017 UT 77, 416 P.3d 465; *see also Grossen v. DeWitt*, 1999 UT App 167, ¶ 7, 982 P.2d 581 ("By its terms, a directed verdict under Rule 50 of the Utah Rules of Civil Procedure contemplates only a jury trial."). "In the context of a bench trial, however, where there is no jury verdict, the directed verdict's procedural counterpart is a motion to dismiss." *Grossen*, 1999 UT App 167, ¶ 8. In most instances, the party making this type of motion is the party that does not bear the burden of proof, and in that context the motion to dismiss should be granted "when the trial judge finds that the claimant has failed to make out a prima facie case or when the trial judge is not persuaded by the evidence presented by the claimant." *See Bair*, 2001 UT 20, ¶ 12 (quotation simplified) (referencing rule 41(b) of the Utah Rules of Civil Procedure).

¶34 But in this instance, Philpot was moving for "directed verdict" on his own affirmative defense, a matter on which he bore the burden. In that context, the motion looks more like one for summary judgment: the movant is contending that, even though it bears the burden of proof, the evidence has come in in such one-sided fashion that no reasonable factfinder could possibly rule in favor of the non-movant on the relevant issue, and that judgment should enter in the movant's favor as a matter of law. *See Nay v. General Motors Corp., GMC Truck Div.*, 850 P.2d 1260, 1264 (Utah 1993) (explaining that "both summary judgment and directed verdicts require that no questions of material fact exist and that the moving party be entitled to judgment as a matter of law"); *see also Liley v. Cedar Springs Ranch Inc.*, 2017 UT App 166, ¶ 23, 405 P.3d 817 ("A court may grant a directed verdict motion if a party has been fully heard on an issue during a jury trial and

the court finds that a reasonable [factfinder] would not have a legally sufficient evidentiary basis to find for the party on that issue." (quotation simplified)). And as already noted, "we will affirm the denial of a motion for judgment as a matter of law when a review of the evidence in a light most favorable to the non-moving party demonstrates that reasonable minds could disagree with the ground asserted for the motion." *Pinney v. Carrera*, 2019 UT App 12, ¶ 20, 438 P.3d 902 (quotation simplified), *aff'd*, 2020 UT 43, 469 P.3d 970.

¶35 In the brief he filed in support of his motion, Philpot invoked Utah's borrowing statute, and asserted that Lender's cause of action arose in Pennsylvania. In this motion, Philpot did not assert that any other state's law supplied the statute of limitations; instead, he focused entirely on Pennsylvania.

¶36 In ruling on Philpot's motion, the trial court applied the proper approach in assessing the applicability of Utah's borrowing statute—that is, it began by asking whether Lender's cause of action arose in a jurisdiction other than Utah. *See Financial Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 17 (Utah Ct. App. 1994) (stating that, "in order to determine the applicability of" the borrowing statute, "we must first determine" whether the applicable cause of action arose in a jurisdiction other than Utah). Here, the court noted that the only person who testified at trial was Witness, and that "[a]lthough [Philpot] cross-examined [Witness]," he did not present any evidence of his own and he "did not identify or refer to any testimony or exhibit that establishe[d] where the present cause of action arose o[r] where the contract is to be performed." In particular, the court noted that "[t]here has been no evidence of where payments were made, or if [Philpot] was instructed to make payments at any specific location." In the end, the court ruled that the meager evidence that was offered—that Lender "does not transact business in Utah, that its home office is in Pennsylvania and that [Agency] had offices nationwide"—was simply

"insufficient to establish where the contract is to be performed." Accordingly, the court concluded that Philpot had not carried his burden of demonstrating, as a matter of law, that Lender's cause of action arose in Pennsylvania. We discern no error in this determination.

¶37 When the evidence presented at trial—such as it is—on the question of where Lender's cause of action arose is viewed in the light most favorable to Lender, it is clear that "reasonable minds could disagree with the ground asserted for the motion." *See Pinney*, 2019 UT App 12, ¶ 20 (quotation simplified). On this evidence, a factfinder could reasonably conclude that the evidence was not strong enough to establish that Lender's cause of action arose in Pennsylvania. In particular, a factfinder could reasonably determine that Philpot had failed to carry his burden on that point. As the trial court noted, the evidence to which Philpot pointed failed to definitively establish where payments were to be made, or actually were made. And there was some indication that at least three additional states (Delaware, California, and Ohio) could have potentially been involved. Under these circumstances, the trial court did not err when it denied Philpot's motion for judgment as a matter of law on his affirmative defense.

### D. The Post-Trial Ruling

¶38 Finally, Philpot challenges the trial court's post-trial findings and conclusions, in which the court concluded that Philpot had "not met his burden to show" that Lender's cause of action arose in any state other than Utah, and therefore determined that "[t]he applicable statute of limitations is the Utah statute of six years." The conclusion we reached in the preceding section—that a reasonable factfinder could have concluded that Philpot had failed to carry his burden of proving where Lender's cause of action arose—informs our conclusion in this section too:

the trial court's post-trial ruling precisely to that effect, made as a factfinder, was not erroneous and therefore not subject to reversal.

¶39　After the court denied Philpot's post-trial motion, it held a hearing to give the parties an opportunity to present closing arguments. At that hearing, Philpot did not address Lender's merits-based contentions, but instead renewed his argument that Lender's claims were untimely, and urged the trial court to find that Lender's cause of action arose in a jurisdiction other than Utah. This time, though, he did not limit his argument just to Pennsylvania; instead, he asserted that Lender's cause of action might have arisen in Pennsylvania, California, Delaware, or Ohio. But he was, of course, referencing the same evidence that he referenced during the briefing and argument on his post-trial motion: the evidence presented at trial.

¶40　After considering that evidence and the parties' closing arguments, the court made written findings of fact and conclusions of law. The court engaged in a legal analysis similar to the one it had undertaken in connection with the post-trial motion, but this time it did so as factfinder. It applied Utah's borrowing statute, and addressed the issue of whether Lender's cause of action arose in a jurisdiction other than Utah. It examined the very same evidence it examined in connection with the post-trial motion, and concluded that Philpot had "not met his burden to show that the cause of action arose in Pennsylvania" or any other state outside Utah, and therefore Utah's six-year statute of limitations should apply.

¶41　We address the post-trial ruling separately from the ruling on Philpot's post-trial motion because of the potentially different standard we must apply. "The appropriate standard of review for a lower court's decision is dependent upon the nature of the issue," and thus "a key question is whether the trial court's decision qualifies as a finding of fact, a conclusion of law, or a determination of a mixed question of law and fact." *Randolph v.*

*State*, 2022 UT 34, ¶ 17, 515 P.3d 444 (quotation simplified). "Findings of fact typically entail the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind," and a trial court's "factual determinations enjoy a high degree of deference and are overturned only when clearly erroneous." *Id.* ¶ 18 (quotation simplified). A trial court's conclusions of law, by contrast, are reviewed non-deferentially. *Id.* ¶ 19. But "mixed questions of law and fact fall somewhere in the twilight between deferential review of findings of fact and searching reconsideration of conclusions of law." *Id.* ¶ 20 (quotation simplified).

¶42 The parties have not provided briefing on the question of whether a trial court's determination that a burden of proof has not been met is a factual finding, a legal conclusion, or a mixed question of law and fact. But in this case, we need not tarry over this issue, because regardless of the level of review we apply to the trial court's determination, we see no error in it.

¶43 If it is a factual finding, we would review it deferentially, and would have no trouble concluding that the court's post-trial findings are free of any clear error. But even if it is a legal conclusion or a mixed question that is more law-like than fact-like, we would nevertheless affirm, on the basis that the court's decision is not erroneous. As already noted, at least four states (other than Utah) were discussed at trial, but no definitive evidence was introduced indicating that Lender's cause of action arose in any one of them. Lender was headquartered in Pennsylvania, but there was no evidence that it had asked Philpot to perform the contracts there or that Philpot had actually sent any payments there. One provision of the contracts referenced at least some payments potentially going to an address in Delaware, but there was no evidence that Philpot had actually sent any payments there. Philpot's most recent payments had been made to Agency, not to Lender directly, but the evidence regarding where those payments had actually been sent was vague. And the

contracts themselves spoke of Ohio as the place where the contracts had been entered into, but there was no evidence that any payments had ever been sent there either.

¶44    Faced with this conflicting and rather spare evidentiary record, we perceive no error in the court's determination that Philpot had failed to carry his burden of proving that Lender's cause of action arose in any particular state other than Utah. The court then correctly built upon that determination by applying the general rule—applicable whenever the cause of action does not arise in another state—that Utah's statute of limitations should apply. On that basis, the court deemed Lender's lawsuit timely, and on this record that ruling was not erroneous.

CONCLUSION

¶45    We perceive no error in any of the trial court's various determinations that Philpot had not carried his burden of demonstrating that Lender's complaint was untimely. Accordingly, we reject Philpot's appellate arguments, and affirm the trial court's judgment in favor of Lender.

———————